

# Maher Legal Services PC

September 18, 2018

Sent via U.S. First-Class Mail to:

U. S. Department of State
Office of Information Programs and Services
A/GIS/IPS/RL
SA-2, Suite 8100
Washington, D. C. 20522-0208

Re: Request on Behalf of Staff Sergeant Robert Bales

Dear Madam or Sir:

This firm represents Staff Sergeant (SSG) Robert Bales, who is presently confined to the U.S. Disciplinary Barracks in Fort Leavenworth, Kansas. On behalf of our client, SSG Bales, we respectfully submit this request for documents pursuant to the Freedom of Information Act, 5 U.S.C. § 552. **The documents requested herein are encompassed within documents that were the subject of a request made on October 25, 2017, by Kathryn Kurinsky, Reference No. F-2017-16570, which was dismissed and re-opened as Reference No. 2017-17207.** The present request is more narrow than the request that was the subject of F-2017-16750, new number F-2017-17207, in that the present request does not seek documents related to studies of the drug mefloquine.

Specifically, we respectfully request **travel records** and **biometric data/evidence** related to Afghan witnesses the U.S. Army and the ("DoS" or "State Department") brought to the United States in the Army's court-martial, *United States v. SSG Robert Bales*, Docket Number ARMY 20130743, which occurred on January 17, April 23, June 5, and August 7, 13, and 19-23, 2013, on Joint Base Lewis McChord in the state of Washington. The specific documents we request would fall within the dates ranging from March 1, 2012, through December 31, 2013. We believe these documents are in the State Department's possession because the prosecutors in the case stated in open court that they were working with the State Department to secure the presence of the Afghan witnesses in the United States. (*See* Record of Trial, pp. 407 – 412). To assist the State Department in locating these documents, a detailed description of the documents sought and locations where they may be obtained is provided below.

I.  **TRAVEL RECORDS PERTAINING TO THE SEVEN AFGHAN WITNESSES**.

We respectfully request travel records in the State Department's possession related to the following individuals of apparent Afghan descent and citizenship ("the Afghan witnesses"):

> 1. Mullah Baraan (Prosecution witness 1) is tied to an IED event that occurred 7 January 2010 in Helmand Province. His biometric identification number is B28JMS3P2 and he shares the same cell phone as Hikmatullah (Prosecution witness 2).

2. Hikmatullah (Prosecution witness 2), is linked to two IED events in Panjawai, Afghanistan, occurring in 2011 and 2012 respectively. His biometric identification number is B28JPGYG6.

3. Rafiullah (Prosecution witness 5) is linked to and IED event occurring on 28 October 2012 in Panjawai, Afghanistan. His biometric identification number is B2JKMH83. The US Government matched Rafiullah to this event on 13 March 2013.

4. Haji Baqi (Brother of prosecution witness 8), is tied to an IED event that occurred on 14 October 2010 in Panjawai, Afghanistan. His biometric identification number is B28JMV6XE.

5. Haji Mohammad Wazir (Prosecution witness 12) had Taliban tattoos on his hand. Wazir is believed to be the leader of this insurgent cell.

6. Dost Mohammad (Prosecution witness 13), is tied to two, 2011 IED events occurring in Kandahar, Afghanistan. His biometric identification number is B2JK4VVSS.

7. Naimatullah (Prosecution witness 16), is responsible for two IEDs occurring in the Zhary and Panjawai Districts of Afghanistan in 2011 and 2012, respectively. His biometric identification number is B28JQ5GGR.

The U.S. Army, by and through the Office of the Staff Judge Advocate, I Corps ("I Corps SJA"), at Joint Base Lewis-McChord, coordinated with the State Department to facilitate the travel from Panjwai and Zharay Districts, Kandahar Provence, Afghanistan, to the United States in the summer of 2013. Importantly, because the Afghan witnesses' travel was coordinated by the Army and State Department, and not requested by the Afghan witnesses themselves, we do not consider this request to be one for "personal information," the likes of which would be provided to the State Department in the ordinary course of a foreign national who requests a visa.

Provided below is a description of the types of documents this request encompasses, and additional background that should provide helpful in searching for responsive documents.

    A.    <u>Visa, Passport, and other Travel-Related Documents</u>.

The response to this request should include visas issued to the Afghan witnesses, and accompanying travel documents. The visas for entry into the United States for each individual were issued in Kabul on July 2, 2013 and were valid through September 29, 2013. The passports for each individual were issued by the Government of the Islamic Republic of Afghanistan, Ministry of the Interior, Central Passport Department. We believe the Afghan witnesses flew on Delta Airlines Flight 7 on August 17, 2013, which departed DUBAI, UAE and arrived in



Atlanta, Georgia, USA on August 18, 2013, with onward travel to Seattle, Washington. The exit flight from the United States is believed to have occurred the last week of August 2013 with Dulles Airport being the point of exit.

Additional specificity concerning the travel of the Afghan citizens is as follows:



Further, the response to this request should also include any and all endorsements presented to and/or signed by the military and/or civilian government approval authorities for the travel of the Afghan witnesses. This request expressly includes documents (e.g., email messages or other correspondence) discussing the use of "pseudo SSANs" for the Afghan witnesses, referring to the Afghan witnesses as "Afghan civilian employees," and exempting the Afghan witnesses from the mandatory provisions of the Travel and Transportation Reform Act of 1998.

    B.    <u>Correspondence between the State Department and the Army I Corps SJA</u>

Further, the response to this request should also include any and all emails and/or correspondence between the US Army (Office of the Staff Judge Advocate, I Corps, Joint Base Lewis-McChord, Washington) prosecution and the State Department relating to statements the lead prosecutor made in open court about Mullah Barran being biometrically enrolled and having been a former coalition detainee in Afghanistan. Specifically, we seek copies of correspondence, including email messages, the lead prosecutor relied upon when he spoke in open court to the judge presiding over the trial.

    C.    <u>Representations made on behalf of the United States to Afghanistan</u>

The response should likewise include: 1) any and all DOS communications to the Government of the Islamic Republic of Afghanistan concerning SSG Bales after the March 2012 incident in Panjwai in Kandahar province, Afghanistan, but before the trial in August 2013; and



2) any and all DOS communications to the Government of the Islamic Republic of Afghanistan concerning the United States' position after the trial and sentence.

### D. Other Travel-Related Documents

This request also seeks any other documents that may be relevant to or reviewed by the State Department in processing the travel of the Afghan witnesses. A representative example of what might be responsive is a "baseball" card, which follows on the next page.

| Capturing Unit: TF | | | Cat | Charges | Estimated Release Date | Primary Court* (Amin, CJ; Matin) | Appellate Court |
|---|---|---|---|---|---|---|---|
| ISN | Name | Capture | | | | | |
| 5460 (MCP) | Mohammad Zahid Age: 22 | DOC: 23 Feb 12 Khost Province RC-East | D | Arts. 14 & 19 (Law on Combat against Terrorist Offenses) | 22 Feb 16 | Art. 5: 4 yrs** Art. 19: 2 yrs | Pending Def. Appeal: Yes Gov Appeal: TBD |

Prosecutor: Najib (replacement)     Defense Attorney: Mohammad Aman (CAPS)

**Facts:** The Accused was not the TI, but was captured during a joint CF/ANA operation. CF reporting indicates that the Accused is involved in the building and emplacing of IED's. During the joint operation, over (100) MAM's were enrolled in the biometric system. The fingerprints of the Accused were PID to latent prints discovered on an IED located in a cache discovered on 02 Jan 11. Seized with the cache were: (4) cell phones; (4) spider devices; (4) HME samples; (8) battery packs; (1) improvised charge; (3) DTMF boards and magnetic IED components.

Nothing of significance was seized on the DOC.

**Art 5-Subversive Activities

**Trial: Prosecutor:** The prosecutor summarized the circumstances of capture. He then argued that the fingerprint match of the Accused to a latent print lifted off of the IED discovered on 02 Jan 11, was sufficient evidence to convict under Article 14. Additionally, the prosecutor argued that CF reporting that indicated the Accused was involved with the TB, combined with the PSP was sufficient evidence to convict for membership under Article 19.

**Defense Attorney:** The defense attorney argued that nothing was seized from the Accused on the DOC. Additionally, the defense argued that CF reporting is not evidence, and the biometric testing was conducted in violation of Afghan law, making the results invalid. Therefore, the defense concluded that, since there was no physical or forensic evidence against the Accused, there was no basis for a conviction under Articles 14 and 19.

**Accused:** The Accused denied all allegations. He stated that he was a student and had no connection with the TB. When asked by the Court how his fingerprint was found on an IED, the Accused was unable to provide an answer.

**Lessons Learned:** The fingerprint match on an IED, supported by the Paladin PSP was the reason for the conviction in this case. Mitigating for sentencing purposes was the fact that the IED was found in a cache and not found emplaced by a road or set to detonate somewhere. The Judges specifically inquired as to where the IED was found, and Judge Amin questioned whether or not the IED was found emplaced by a road.

**ODP:** No

**Advisors:** Terry J. Bard, INL JA; Parwiz Masoodi, INL ALC

*2-Judge Panel

## II. BIOMETRIC DATA PERTAINING TO THE AFGHAN WITNESSES.

This request also seeks information related to biometric data/evidence related to Afghan witnesses, including any correspondence between the State Department and I Corps SJA regarding biometric data of the Afghan witnesses. We have reason to believe such information exists because in the court-martial proceedings, the lead prosecutor made in open court about Mullah Barran being biometrically enrolled and having been a former coalition detainee in Afghanistan. We believe that the State Department must have reviewed the biometric data, or at least corresponded with the Army or other Federal Government agencies, regarding the data in processing the travel requests for the Afghan witnesses. To assist the State Department in its search for responsive documents, a background on biometric data, and summary of locations where responsive documents may be located, are provided below.



A.    <u>The State Department's Use of Biometrics in Afghanistan</u>

"Biometrics in Afghanistan centers on denying the enemy anonymity among the populace." Center for Army Lessons Learned, *Commander's Guide to Biometrics in Afghanistan – Observations, Insights, and Lessons* (No. 11-25, 2011) at 37. "Biometrics is a decisive battlefield capability being used with increasing intensity and success across Afghanistan. It effectively identifies insurgents, verifies local and third-country nationals accessing our bases and facilities, and links people to events." *Id.* at (i).

"Biometrics allows an almost foolproof means of identification that is noninvasive yet extraordinarily accurate." *Id.* at 23. Soldiers carrying enrollment devices in their kits, called BAT, for Biometrics Automated Toolset, and/or HIIDE, for Handheld Interagency Identity Detection Equipment. *Id.* at 50, 61. Upon biometrics enrollment, the person is assigned a biometric enrollment number, their fingerprints and photograph are taken, an iris scan is performed, DNA is secured, personal data is obtained, all uploaded as a template. The biometrics enrollment is transmitted to the authoritative database – Automated Biometrics Identification System (ABIS) or (A-ABIS) Afghanistan Automated Biometrics Identification System, where it is stored for later reference. *Id.* at 47; 61.

Biometric data is particularly useful in our forces' battle against improvised explosive devices (IEDs). When an IED event occurs, be it an explosion or where forces discover and diffuse the bomb, the GRID coordinate is recorded, the event is assigned an "IED event number" and the IED components are exploited for biometrics, *i.e.*, DNA from skin left on wires when the terrorist twists the wires or fingerprints left on components. Latent fingerprints recovered from bomb parts and then compared, or "exploited," to templates already within ABIS or A-ABIS stored from previous enrollments. A "match" is often referred to as a "hit."

B.    <u>The Locations Where the Records Can Be Reasonably Found and Retrieved</u>

The State Department routinely uses the following biometrics resources as part of interagency cooperation and operations in Afghanistan to identify and confirm Afghan identities and terror affiliations:

1) the Automated Biometrics Identification System (ABIS);
2) Federal Bureau of Investigation Integrated Automated Fingerprint Identification System (IAFIS);
3) Department of Homeland Security's (DHS) Automated Biometrics Identification System; (IDENT);
4) National Ground Intelligence Center's Automated Identification Management System (AIMS);
5) Biometrics Enterprise Core Capability (successor to ABIS);
6) Biometric Automated Tool Set (BATS);
7) Biometric intelligence analysis report or (BRIARs);
8) Defense Biometrics Identification System (DBIDS);
9) DOD Automated Biometric Information System (DOD ABIS);
10) FBI Electronic Biometric Transmission Specification (FBI EBTS);



    11) US Visitor and Immigrant Status Indicator Technology (US-VISIT);
    12) United States Army Criminal Investigation Laboratory (USACIL);
    13) Biometrics Identity Management Agency (BIMA);
    14) International Criminal Police Organization's (INTERPOL) biometrics holdings;
    15) NIPRNET architecture at http://id.socom.mil; and
    16) US Special Operations Biometrics Analysis and Coordination Cell (BACC).

Use of these systems and databases is straightforward, common, and often less complicated than a Google or Lexis-Nexis search.

Further, we recognize that the FOIA does not require agencies to create records. However, the aforementioned biometrics servers and databases contain the records sought. The following DOS components with access to responsive records/information include, but are not limited to:

    1) Kabul Embassy;
    2) International Narcotics and Law Enforcement (INL);
    3) Conflict & Stabilization Operations (CSO);
    4) Counterterrorism (CT);
    5) Office to Monitor and Combat Trafficking in Persons (TIP);
    6) Office of Global Criminal Justice (GCJ);
    7) South and Central Asian Affairs (SCA); and
    8) Personnel assigned to Hartsfield International Airport in Atlanta, Georgia, and Dulles International Airport in northern Virginia.

                \*    \*    \*    \*

If the fee in this matter is estimated to exceed $1,000, kindly advise us before you proceed. We look forward to your determination and disclosure of the documents requested, ideally in electronic format, within the timeframe set forth by law, regulation, and DOS policy. We look forward to working with you in seeking a successful conclusion to the search for responsive documents. To that end, if questions or concerns arise during the process, please contact Kevin Mikolashek at kevinmikolashek@maherlegalservices.com or at (703) 298-2891; or John Maher at johnmaher@maherlegalservices.com or at (312) 804-9912. Thank you very much for your consideration.

Sincerely,

JOHN N. MAHER
KEVIN J. MIKOLASHEK
MAHER LEGAL SERVICES, P.C.

