# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ROBERT BALES, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 18-2779 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 12 |
| | : | | |
| UNITED STATES DEPARTMENT OF STATE, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is a Freedom of Information Act ("FOIA") case brought by Robert Bales, a former member of the U.S. Military who is currently serving a life sentence after having been convicted by court-martial for the 2012 murders of sixteen Afghan civilians. *See United States v. Bales*, No. ARMY 20130743, 2017 WL 4331013 (A. Ct. Crim. App. Sept. 27, 2017) (affirming Bales's conviction), *aff'd*, 77 M.J. 268 (C.A.A.F. 2018), *cert denied*, 138 S. Ct. 2692 (2018). At this stage of the litigation, the Department of State ("the Department" or "the Government") asks the Court to rule that it properly responded to a FOIA request from Bales when it refused to confirm or deny the existence of records (a so-called "*Glomar* response") relating to visas requested by or issued to seven Afghan witnesses who testified at the Plaintiff's court-martial.

### I. FACTUAL BACKGROUND

On September 18, 2018, Plaintiff, acting through his attorney, submitted a FOIA request to the Department seeking "travel records and biometric data/evidence related to Afghan witnesses the U.S. Army and the [State Department] brought to the United States in the Army's court-martial" which was held on a base in the state of Washington in 2013. Compl. Ex. 1

("FOIA Request") at 1, ECF No. 1-2; *see also* Def.'s Mot. for Summ. J., Ex. 1, Decl. of Eric F. Stein ("Stein Decl.") ¶ 6, ECF No. 12-2. The request sought two categories of records. The first was "Travel records pertaining to the seven Afghan witnesses," including visas, passports, related documents or endorsements, and any correspondence between the Department and the military or between the Department and the Government of the Islamic Republic of Afghanistan. FOIA Request at 2–3. The second category was biometric data, including DNA samples or iris scans, that pertained to the witnesses. *Id.* at 4–6. On November 28, 2018 the Plaintiff filed this lawsuit attempting to compel the Department's compliance with its obligations under FOIA. *See* Compl., ECF No. 1.

On April 11, 2019, the Department gave Plaintiff a partial response and explained "that it could not disclose any visa records, including whether any visa records exist relative to a particular individual, because these records are confidential under . . . the Immigration and Nationality Act [("INA")], 8 U.S.C. § 1202(f), and Plaintiff's request did not include authorization from the subjects of the request." Joint Status Report of 5/6/2019, ECF No. 9. Two weeks later, the Department informed the Plaintiff that it had not located any documents responsive to those parts of his request that did not relate to information protected under Section 1202(f). *Id.* The parties conferred over the following months and it was determined that Plaintiff would only be challenging the *Glomar* response he received in connection with the visa records, not any other part of the response. Joint Status Report of 7/3/2019, ECF No. 11.

The Department moved for summary judgment, arguing that its *Glomar* response was valid under FOIA Exemptions 3 and 6. Mem. of L. in Supp. of Def.'s Mot. for Summ. J. ("MSJ Br."), ECF No. 12-1. Plaintiff opposed this motion. Mem. in Opp'n to Def.'s Mot. for Summ. J ("Opp'n"), ECF No. 13, but did not file a cross-motion for summary judgment, as would be

typical in a FOIA case.[1]  The Department replied, and the motion is now ripe for decision. Reply in Supp. of Def.'s Mot. for Summ. J. ("Reply"), ECF No. 14.

## II.  LEGAL FRAMEWORK

FOIA "sets forth a policy of broad disclosure of Government documents in order 'to ensure an informed citizenry, vital to the functioning of a democratic society.'"  *FBI v. Abramson*, 456 U.S. 615, 621 (1982) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978)).  The Act mandates release of properly requested federal agency records, unless the materials fall squarely within one of nine statutory exemptions. *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (citing 5 U.S.C. § 552(a)(3)(A), (b)).  Additionally, FOIA "requires that even if some materials from the requested record are exempt from disclosure, any 'reasonably segregable' information from those documents must be disclosed after redaction of the exempt information unless the exempt portions are 'inextricably intertwined with exempt portions.'"  *Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002) (citing 5 U.S.C. § 552(b) and *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)).  Exemptions must be "narrowly construed," and "conclusory and generalized allegations of exemptions are unacceptable."  *Prop. of the People, Inc. v. Office of Mgmt. & Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (quoting *Morley v. CIA*, 508 F.3d 1108, 1114–15 (D.C. Cir. 2007).

---

[1] "FOIA cases are routinely decided based on cross-motions for summary judgment." *Jordan v. U.S. Dep't of Labor*, 273 F. Supp. 3d 214, 245 n.37 (D.D.C. 2017).  With this in mind, the Department urges the Court to construe Plaintiff's Opposition to its motion as a cross-motion for summary judgment, despite the fact that Plaintiff did not style its filing as such.  Reply at 1 n.1. Because the Court finds that the Department is entitled to summary judgment, the status of Plaintiff's filing is immaterial.  To the extent that it would be appropriate for the Court to view the Opposition as a cross-motion for summary judgment, the motion would be denied.

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). An agency is entitled to summary judgment if no material facts are genuinely in dispute and the agency demonstrates "that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017). "This burden does not shift even when the requester files a cross-motion for summary judgment"—and this Plaintiff has not—"because 'the Government ultimately has the onus of proving that the documents are exempt from disclosure.'" *Hardy v. ATF*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017) (brackets omitted) (quoting *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904–05 (D.C. Cir. 1999)).

To carry its burden, the agency must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of the withheld document to which they apply." *Elec. Privacy Info. Ctr. v. DEA*, 192 F. Supp. 3d 92, 103 (D.D.C. 2016) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)). The agency "cannot justify its withholdings on the basis of summary statements that merely reiterate legal standards or offer 'far-ranging category definitions for information,'" *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 955 F. Supp. 2d 4, 13 (D.D.C. 2013) (quoting *King v. U.S. Dep't of Justice*, 830 F.2d 210, 221 (D.C. Cir. 1987)), but it "may rely on declarations that are reasonably detailed and non-conclusory," *Pinson v. U.S. Dep't of Justice*, 245 F. Supp. 3d 225, 239 (D.D.C. 2017); *see also Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (requiring that, to

support summary judgment, agency affidavits must "demonstrate that the information withheld logically falls within the claimed exception, and . . . not [be] controverted by either contrary evidence in the record nor by evidence of agency bad faith" (quoting *Miller v. Casey*, 730 F.3d 773, 776 (D.C. Cir. 1984) (quotation omitted))). While a reviewing court should "respect the expertise of an agency," *Hayden v. NSA / Cent. Sec. Serv.*, 608 F.2d 1381, 1388 (D.C. Cir. 1979), courts review an agency's decision to withhold records *de novo*. *Pinson*, 245 F. Supp. 3d at 239.

"*Glomar* responses are an exception to the general rule that agencies must acknowledge the existence of information responsive to a FOIA request and provide specific, non-conclusory justifications for withholding that information." *Am. Civil Liberties Union v. CIA* ("*ACLU*"), 710 F.3d 422, 426 (D.C. Cir. 2013) (quoting *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1178 (D.C. Cir. 2011)). An agency can only give a *Glomar* response "when confirming or denying the existence of records would itself 'cause harm cognizable under a[] FOIA exception.'" *Id.* (quoting *Roth*, 642 F.3d at 1178) (internal quotations omitted). To apply this rule and determine whether the very existence of records fits in a FOIA exemption, "courts apply the general exemption review standards established in non-*Glomar* cases." *Id.* (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)). "Ultimately," whether or not the plaintiff's argument is based on public disclosure, an agency's justification for invoking a *Glomar* response or any FOIA exemption "is sufficient if it appears 'logical' or 'plausible.'" *Id.* at 427 (quoting *Wolf*, 473 F.3d at 374–75).

The exemptions at issue in this case are Exemptions 3 and 6. Exemption 3 allows the government to withhold information "specifically exempted from disclosure by statute," if such statute either "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to

particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Here, the Government relies on section 1202(f) of the INA, 8 U.S.C. § 1202(f), which says that records "pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential." *See* MSJ Br. at 1. Exemption 6 prevents disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

### III. ANALYSIS

The Department argues that Exemptions 3 and 6 are independent grounds on which its *Glomar* response was proper. This means the Department is entitled to summary judgment if it is correct on either argument. Because the Court finds that Exemption 6 is a proper basis for the Department's *Glomar* response, it has no occasion to decide whether Exemption 3 might also provide a proper basis.

Before addressing the Department's justification for its *Glomar* response, the Court must address the Plaintiff's primary argument, which is that the response he received from the Department is not truly a *Glomar* response. Opp'n at 5. It is not a *Glomar* response, he says, because "the State Department's own declaration indicated that documents responsive to [the Plaintiff's] request do, in fact, exist." *Id.* at 4. This is not the case. The Plaintiff quotes two paragraphs of the Department's declaration, *id.* at 3–4 (quoting Stein Decl. ¶¶ 41–42), in which the declarant first explains that acknowledging the existence of records would disclose that a visa had been applied for and then explains that the privacy interests of the Afghan witnesses are "of paramount importance." Stein Decl. ¶¶ 41–42. The Plaintiff does not point to any language in which the Department's declarant directly acknowledges the existence of records, and, to the

6

extent the Plaintiff is relying on inferential reasoning, he does not explain his logic. The argument that the Department did not produce a *Glomar* response therefore fails.

Moving on to the Department's justification, FOIA Exemption 6 guards against disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). There are three stages to analyzing whether Exemption 6 properly applies. First, the analysis "requires . . . a determination of whether the document in question qualifies as 'a personnel, medical, or similar file.'" *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 140 (D.D.C. 2014) (alteration in original) (quoting *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008). The term "similar files" is "construed broadly and is 'intended to cover detailed Government records on an individual which can be identified as applying to that individual.'" *Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 105–06 (D.D.C. 2010) (quoting *Dep't of State v. Wash. Post. Co.*, 456 U.S. 595, 602 (1982)). Second, the Court must "determine whether there is a 'substantial' privacy interest in preventing the document[s'] disclosure," or, in a *Glomar* case, the information's disclosure. *Judicial Watch*, 25 F. Supp. 3d at 140 (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). "[U]se of the word substantial in this [FOIA] context, means less than it might seem. A substantial privacy interest is anything greater than a *de minimis* privacy interest." *Multi Ag Media*, 515 F.3d at 1229–30. Third, if a substantial privacy interest has been identified, then the Court must "determine whether [the records'] disclosure 'would constitute a clearly unwarranted invasion of personal privacy'" within the meaning of the statute. *Id.* at 1228 (quoting 5 U.S.C. § 552(b)(6)). To do this, the Court "balance[s] the privacy interest that would be compromised . . . against any public interest in the requested information." *Id.*; *see also*

*Sullivan v. Veterans Admin.*, 617 F. Supp. 258, 260 (D.D.C. 1985) (describing two steps to the balancing analysis: first, "identify[ing] the nature and magnitude of the various interests involved" and second, "balancing these competing interests"). To establish a public interest, a plaintiff must show "that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake"; and that "the information is likely to advance that interest." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

For the first stage of this analysis, the Department asserts that Exemption 6 applies to the fact that responsive visa records either do or do not exist—as is relevant for the *Glomar* analysis. *See* MSJ Br. at 8–9. The Department points to cases in which personal privacy interests in underlying documents provided a basis for a *Glomar* response under FOIA Exemptions 6 and 7. *E.g.*, *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, 745 F.3d 535, 541–44 (D.C. Cir. 2014). The Plaintiff does not challenge this. In part, this is because he fails to address Exemption 6 in any clear way in his opposition brief. However, while the Court can discern elements of an argument on subsequent steps of the Exemption 6 analysis, it sees nothing at all from the Plaintiff on this first question. In light of binding precedents directing that the Exemption should be read broadly, the Court concludes that the fact of the existence or nonexistence of visa records is properly covered by Exemption 6.

At the second stage, where the Court must find a substantial privacy interest, the Department points to the Afghan witness's "privacy interest in [their] own immigration status[es], including whether [they have] applied for or been granted a visa." MSJ Br. at 9; *see also* Stein Decl. ¶ 41 ("[D]isclosure of the existence or non-existence of such records to a third party would result in a clearly unwarranted invasion of the subject of the record's personal privacy."). The Plaintiff does not make any argument or cite any caselaw suggesting that

8

individuals do not have a privacy right in their immigration status, but simply asserts, without pointing to any evidence, that the Department is being disingenuous when it says it is attempting "to protect the privacy rights of individuals applying for permission to enter the United States." Opp'n at 5.  The Department's motives are not part of the FOIA analysis, so even if the Plaintiff is correct that the Department is not genuinely interested in protecting the Afghan witnesses' privacy, it would not matter.  Exemption 6 is implicated because disclosing whether visa records exist would disclose information "applying to" each Afghan witness.  *Center for Biological Diversity v. U.S. Army Corps of Engineers*, 405 F. Supp. 3d 127, 143 (D.D.C. 2019) (quoting *Washington Post Co.*, 456 U.S. at 602).

At the third stage, identifying and balancing the public interest, the Plaintiff has come closer to putting forward an argument.  The Court is able to identify two public interests that he arguably identifies and claims should offset any privacy interest.  The first of these is a national security argument—he says that the Department is making "an effort to prevent the disclosure of records that may reflect that Federal Government officials allowed those who might do harm to American citizens to enter the United States."  Opp'n at 5.  Because the Plaintiff is the non-moving party on the Government's motion for summary judgment, the Court must view the evidence in the light most favorable to him and must draw "all justifiable inferences" in his favor.  *Ahuruonye v. U.S. Dep't of Interior*, 239 F. Supp. 3d 136, 139–140 (D.D.C. 2017) (citing *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006), and quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  There is a limit, however, to the inferences the Court can draw.  "The non-moving party . . . cannot rely on 'mere allegations or denials'" or on "[c]onclusory allegations unsupported by factual data."  *Id.* (quoting *Burke v. Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002) and *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 908 (D.C. Cir. 1999)).

The Plaintiff points to no evidence whatsoever supporting either the notion that the Afghan witnesses intend to do harm to the United States or the notion that the Government is engaged in some sort of cover-up to protect them. It is possible that the Plaintiff did not intend for the Court to read this offhand disparagement of the Government and the witnesses as an argument for a public interest in disclosing the existence or nonexistence of responsive records, but to the extend he did so intend it, the argument fails.

The second potential public interest that the Plaintiff arguably identifies is an interest in his potential exoneration. *See* Opp'n at 5–6. The D.C. Circuit has said that "FOIA is not a substitute for discovery in criminal cases or in habeas proceedings," but has also held that there is a substantial public interest in exonerations of wrongfully-convicted inmates, at least if they have been sentenced to death. *Roth*, 642 F.3d at 1177; *id.* at 1175–77. Bales faces life imprisonment, not the death penalty, but the Court will assume without deciding that the public interest in avoiding unjust convictions extends to those facing this second-most extreme punishment. That question does not have to be answered because, assuming that a public interest exists, the Plaintiff would still have to show that "the information" he wants disclosed "is likely to advance [his] interest" in exoneration, and the Plaintiff cannot do so. *Nat'l Archives & Records Admin.*, 541 U.S. at 172. The Court fails to see how Bales's cause would be advanced by merely receiving an answer as to whether or not the Government has visa records for the Afghan witnesses. As the Department notes, Reply at 5 n.5, the U.S. Army Court of Criminal Appeals already rejected the notion that any additional information regarding the Afghan witnesses would have made any difference at the Plaintiff's court-martial, because he had stipulated to such a damning set of facts and had waived the defenses of self-defense, defense of others, and obedience of orders. *Bales*, No. ARMY 20130743, 2017 WL 4331013, at *5–6.

Because the public interest in exoneration of the wrongfully-convicted would not be advanced if the Department were to disclose whether it had visa records pertaining to the Afghan witnesses, the Afghan witnesses' privacy interest in information pertaining to their immigration status and activities outweighs any public interest in disclosure. This means that the Government was justified in issuing a *Glomar* response based on FOIA Exemption 6 and is entitled to summary judgment.

### IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 6, 2020                                        RUDOLPH CONTRERAS
                                                             United States District Judge